IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiffs,<br><br>v.<br><br>REX C. STEFFES, et. al,<br><br>     Defendants. | Case No. 10 CV 06266<br><br>Judge Robert M. Dow, Jr. |

## DEFENDANT W. GARY GRIFFITHS' MOTION TO DISMISS

Defendant W. Gary Griffiths ("Griffiths"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), moves to dismiss the Complaint [Doc. 1] filed on September 30, 2010 by the Plaintiff Securities and Exchange Commission ("SEC") for failure to state a cause of action and failure to plead fraud with particularity. In support thereof, Griffiths provides the following memorandum.

## MEMORANDUM IN SUPPORT OF MOTION

### I. INTRODUCTION

Without alleging any specific facts to support its conclusions, the SEC attempts to state a claim against Griffiths for allegedly providing inside information obtained as an employee of a subsidiary of Florida East Coast Industries, Inc. ("FECI") to a family member – who then allegedly used the information in trading the FECI's stock. If the Court excludes from its consideration, as it must, the SEC's bare conclusory statements and recitation of the elements of the claim, it is apparent that the Complaint fails to allege facts sufficient to support a claim against Griffiths.

Rather than alleging specific facts to support its claim, the SEC merely asserts that Griffiths somehow **must have** been involved in the alleged insider trading scheme by virtue of his employment and familial relationship with those who traded in the stock. Because a claim may not be based on such assumptions, conclusions, and unsupported inferences, the SEC's claim against Griffiths should be dismissed.

## II. THE COMPLAINT

The SEC's Complaint attempts to allege insider trading activities among Griffiths and five other defendants relating to the purchase and sale of securities in FECI in the days and weeks prior to the public announcement of FECI's acquisition by Fortress Investment Group LLC ("Fortress"). Without any allegations of supporting fact, the Complaint suggests that Griffiths tipped his brother-in-law, Rex C. Steffes, to FECI's impending acquisition by Fortress in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) (the "Act"), and Rule 10b-5 thereunder.

Although the Complaint purports to make out such a case, it is remarkable in its lack of factual specificity as to the core components of an insider trading claim. Indeed, no factual allegations about Griffiths show: (i) what material nonpublic information he obtained; (ii) how he obtained the information; (ii) that he misappropriated the information; (iii) how he breached a fiduciary duty; or (iv) Griffiths' alleged fraudulent acts or intent.

Griffiths is a Florida resident and was employed as the Vice President and Chief Mechanical Officer of Florida East Coast Railway, LLC ("FECR"), a wholly-owned subsidiary of FECI. [*Id.*, ¶ 11] Griffiths was responsible for supervising and managing the leasing, maintenance and repair of freight cars and locomotives. [*Id.* ¶ 30] His office was located in

2

FECR's headquarters in Jacksonville, Florida, and he reported directly to FECR's President and Chief Operating Officer. [*Id.*]

In December 2006, FECI was offered for sale to the highest bidder. [*Id.* ¶ 19] On May 6, 2007, Fortress submitted a definitive offer to purchase FECI. [*Id.* ¶ 28] On May 7, 2007, FECI's board of directors accepted the Fortress offer and, on May 8, 2007, FECI publicly announced its merger agreement with Fortress. [*Id.* ¶¶ 28, 29] Griffiths is not alleged to have been involved in, or privy to, the board of directors' negotiations or ultimate decision to sell FECI.

The Complaint implies that Griffiths gained inside information relating to the impending acquisition by virtue of performing duties attendant to his employment with FECR. [*Id.* ¶¶ 34-36] Notably, there are no allegations as to precisely what Griffiths learned – or when, or how he purportedly learned it. The Complaint then builds upon this unsupported implication to allege that Griffiths and co-defendant Cliff Steffes, tipped Griffiths' brother-in-law Rex C. Steffes about the acquisition. [*Id.* ¶ 44] This tipping allegation consists of only a listing of seven telephone calls during the period of March 26, 2007 through April 29, 2007. [*Id.*] The Complaint does not allege what information was conveyed, or in which of these calls inside information was supposedly disclosed.

Rex C. Steffes, Cliff Steffes and seven other individuals are alleged to have traded in FECI securities prior to the public announcement of Fortress' acquisition of FECI. [*Id.* ¶¶ 44-63] The Complaint does not allege that Griffiths traded in FECI securities or profited from the trading. In fact, the Complaint does not allege that Griffiths even knew of the other defendants' trading activity.

## III. ARGUMENT

### A. Applicable Pleading Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To properly state a claim, the Complaint must satisfy the pleading requirements of Rule 8(a)(2). Because the SEC's Complaint alleges fraud by Griffiths, the Complaint must also satisfy the heightened pleading requirements of Rule 9(b). *See, e.g., SEC v. Kelly*, 545 F. Supp. 2d 808, 811 (N.D.Ill. 2008) ("[U]nder Rule 9(b), allegations of securities fraud are subject to heightened pleading requirements.")

Rule 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted); *see also Twombly*, 550 U.S. at 555 (requiring "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (citations omitted)); *Brooks v. Ross*, 578 F. 3d 574, 581 (7th Cir. 2009).

A complaint alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The particularity requirements of Rule 9(b) require sufficient allegations of fact to show "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990).

4

The plaintiff who pleads fraud must reasonably notify each defendant of his purported role in the scheme, and should inform him of the nature of his alleged participation. *See Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). A court may reject a complaint based on fraud that does not distinguish its allegations between multiple defendants. *See, e.g., Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

### B. Elements of a Claim for Insider Trading Under the Misappropriation Theory

There are two theories for establishing liability for insider trading under the Act[1] and Rule 10b-5:[2] (1) the classical theory, which involves an insider buying or selling securities based on inside information; and (2) the misappropriation theory, which involves a person misappropriating material information entrusted to him by virtue of a fiduciary relationship, and trades based on that misappropriation. *SEC v. Maio*, 51 F. 3d 623, 631 (7th Cir. 1995).

In the instant case, the SEC attempts to state a claim against Griffiths under the misappropriation theory. [Complaint, ¶¶ 65, 70, 71] To state that claim, the Complaint must allege sufficient facts to show: (i) the misappropriation of material non-public information; (ii) in breach of a fiduciary duty; (iii) in connection with the purchase or sale of securities; (iv) with the

---

[1] Section 10(b) of the Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).

[2] SEC Rule 10b-5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device scheme or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b-5.

requisite *scienter*. *See SEC v. Michel*, 521 F. Supp. 2d 795, 822-23 (N.D. Ill. 2007) (citing *Maio*, 51 F.3d at 631).

The SEC's Complaint does not plead facts sufficient to establish these basic elements, and therefore fails to state a claim for violation of the Act or Rule 10b-5.

C. **The Complaint Fails to Satisfy the Pleading Requirements of Rule 8(a)(2)**

Only 16 of the Complaint's 72 paragraphs contain allegations relating to Griffiths.[3] Seven of those paragraphs consist of nothing more than legal conclusions and recitations of elements without factual support.[4] Four of the paragraphs that mention Griffiths contain factual allegations only relating to his personal and employment background.[5] Thus, of the 72 paragraphs in the Complaint, only five paragraphs contain factual allegations purporting to support the alleged claim against Griffiths.[6]

Those five paragraphs fail to set forth sufficient facts to plausibly show that Griffiths: (i) knew of material nonpublic information; (ii) misappropriated material non-public information; (iii) breached his fiduciary duty to FECI; and/or (v) possessed the requisite *scienter*.

---

[3] *See* Complaint ¶¶ 2, 3, 7, 11, 30, 32, 33, 34, 35, 36, 43, 44, 65, 70, 71, 72.

[4] With particular regard to Griffiths, the SEC's allegations contained in paragraphs 2, 3, 7, 65, 70, 71, and 72 are either bare legal conclusions or a rote recitation of the elements of the insider trading claim. As such, the Court may properly disregard those allegations for purposes of this motion to dismiss "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1949-50. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Paragraphs 34 and 44 of the Complaint are also based on bare legal conclusions, but set forth the purported factual allegations supporting those legal conclusions.

[5] *See* Complaint ¶¶ 11, 30 31, 32.

[6] *See* Complaint ¶¶ 34, 35, 36, 43, 44. Of those five paragraphs, three purport to address Griffiths' knowledge of material nonpublic information and two purport to address Griffiths' misappropriation of such information.

6

*i.* *The Complaint Fails to Adequately Allege that Griffiths Knew of FECI's Impending Acquisition*

    a. **Griffiths is not alleged to have had any direct information about an acquisition**

The Complaint states that "Griffiths knew that FECI was in the process of being acquired by another company, which constituted material nonpublic information." [Complaint ¶ 34] The SEC draws this important conclusion without articulating what inside information Griffiths had, how or from whom he obtained it, or when he learned it. Instead of adequately pleading such facts, there is a reliance on the following events to support the conclusion that Griffiths knew of the impending acquisition: (i) Griffiths was asked to take an inventory and accounting of the assets in his department (without allegation that he knew or was told the reason for the task) [*id.*]; (ii) Griffiths was aware of an increase in the number of tours at an FECI rail yard located some 300 miles away from his FECR office in Jacksonville [*id.*]; (iii) rail yard employees inquired of Griffiths as to a possible FECI sale [*id.*]; (iv) Griffiths arranged and monitored a rail trip from FECR's Bowden Rail Yard to FECI's Hialeah Rail Yard for FECI and Fortress executives in a railroad car reserved for visitors [*id.* ¶ 35]; and (v) Griffiths had interaction with FECR's president, a person who would have known of the acquisition [*id.* ¶ 36].

These facts – describing nothing more than unexceptional events occurring during Griffiths' performance of his job – do not provide a plausible connection between Griffiths and the confidential activities of FECI's board of directors or others with knowledge of the impending acquisition.

There is no attempt in the Complaint to articulate how these pedestrian facts concerning Griffiths' job duties indicated to Griffiths that FECI was being acquired. As a result, the Complaint lacks well pled facts showing: (i) that Griffiths **actually knew** of material nonpublic information; (ii) **how** Griffiths learned of such information; (iii) **when** Griffiths learned of such

information; or (iv) any factual link between Griffiths and the confidential negotiations of FECI's board of directors relating to FECI's acquisition. Rather, the Complaint simply concludes that Griffiths knew of the impending acquisition. [*Id.* ¶ 34] A complaint based on this kind of implausible assumption may not proceed under *Twombly* and *Iqbal*.

### b. The facts that Griffiths allegedly knew do not constitute material information.

The bare factual assertions made by the SEC fall far short of plausibly alleging Griffiths' possession of "material" information. For a fact to be "material" in this context there must be a substantial likelihood that a reasonable investor would consider disclosure of the fact to have significantly altered the 'total mix' of available information. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). The materiality requirement is intended to filter out essentially useless information that a reasonable investor would not consider significant. *Id.* at 234 (citations omitted). Information is not "material" as a matter of law when its disclosure is so clearly unimportant that reasonable minds could not differ on the question of materiality. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 641 (3d Cir. 1989); *Endo v. Albertine*, 863 F.Supp. 708, 717 (N.D.Ill. 1994).

The facts the SEC actually alleges Griffiths knew, such as visitors touring the rail yard and visitor trips in private railway cars, cannot reasonably be considered "material" in the context of securities trading. The disclosure of such routine facts would hardly create a "substantial likelihood" of significantly altering the 'total mix' of available information. *Levinson*, 485 U.S. at 231-32.

At best, the facts alleged would support only the barest inference that Griffiths might have somehow guessed that a sale of FECI might occur at some unknown time in the future. Even assuming such facts were communicated, they are not useful insider information and no reasonable investor would consider them significant.

### ii. *The Complaint Fails to Allege How and When Griffiths Engaged in Misappropriation, or What He Purportedly Misappropriated.*

The Complaint's factual allegations similarly fail to support the conclusion that Griffiths misappropriated material nonpublic information. The SEC relies on yet another unsubstantiated, conclusory leap when it assumes that Griffiths **must have** conveyed information during telephone calls with a family member after which that family member traded in FECI securities.

The only factual allegations in the Complaint relating to Griffiths' purported misappropriation are brief references to telephone calls between Griffiths and Rex C. Steffes. [Complaint ¶ 44] The allegations state the date of each call and what telephones were used, but do not identify the inside information, if any, allegedly exchanged during these calls. [*Id.*] The allegations are nothing more than an assertion that two friends, who were brothers-in-law, spoke on the telephone seven times over a 35-day period. Mere telephone calls between family members, without more, do not plausibly support a conclusion that Griffiths misappropriated inside information. *Twombly*, 550 U.S. at 557 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed); *Brooks*, 578 F.3d at 581 ("The behavior that [plaintiff] has alleged that the defendants engaged in is just as consistent with lawful conduct as it is wrongdoing. Without more, [plaintiff's] allegations are too vague to provide notice to defendants of the contours of his ... claim.").

Moreover, the few factual allegations relating to Griffiths' misappropriation are themselves inconsistent and implausible. Paragraph 35 of the Complaint alleges that between the

9

dates of April 19 and April 27, 2007 Griffiths, through performance of his regular job duties, learned material nonpublic information. Yet, the majority of Griffiths' alleged telephone calls with Rex C. Steffes (during which, apparently, the SEC contends Griffiths conveyed inside information) occurred **prior to** April 19. [*Id.* ¶ 44(a)-(d)] All but one of the calls occurred **prior to** April 27. [*Id.* ¶ 44 (a)-(f)] Obviously, it would be impossible for Griffiths to convey inside information he was not yet alleged to possess. The SEC's spare pleading makes no effort to reconcile this contradiction. This contradiction demonstrates the implausibility of, and lack of factual support for, the SEC's allegations.

Notably, the Complaint also alleges that Cliff Steffes tipped Rex C. Steffes of the same inside information on or about the same dates as Griffiths. [*Id.* ¶ 44] The Complaint does not attempt to differentiate the source of the inside information. In light of the paucity of facts alleged against Griffiths, the Complaint does not plausibly establish that Griffiths misappropriated inside information. *Iqbal*, 129 S. Ct. at 1951 ("Taken as true, these allegations are consistent with [plaintiff's claim]. But given more likely explanations, they do not plausibly establish this purpose.")

Thus, the SEC's factual allegations purportedly establishing Griffiths' knowledge and misappropriation of material nonpublic information – the most critical element of a misappropriation theory claim – do not provide the Court with adequate facts from which to draw a reasonable inference that Griffiths misappropriated material nonpublic information. As such, the Complaint does not state a plausible claim to relief.

*iii.    The Complaint fails to allege facts showing a breach of fiduciary duty.*

A claim for misappropriation requires the tipper's breach of fiduciary duty to his employer. *Dirks v. SEC,* 463 U.S. 646, 663 (1983) (trading on the basis of material nonpublic

information violates the Act when the trading occurs in connection with the breach of a fiduciary duty). Although the Complaint alleges that Griffiths had a fiduciary duty to FECI [Complaint ¶¶ 32, 33], it fails to plead facts showing that his duty was breached.

"Whether an insider's disclosure breaches his fiduciary duty to his corporation, and is therefore improper, depends largely upon the purpose for the disclosure . . . . Absent a legitimate purpose for a disclosure, the test is whether the disclosure will benefit the insider either directly or indirectly." *Maio*, 51 F. 3d at 632 (citing *Dirks*, 463 U.S. at 654, 662-64). "Absent some personal gain, there has been no breach of duty to stockholders." *Dirks*, 463 U.S. at 662.

Even assuming any such disclosure occurred, the SEC fails to allege the way in which Griffiths may have benefitted directly or indirectly from the disclosure. The SEC's only nod to this critical element is one conclusory sentence in paragraph 65 of the Complaint stating: "Griffiths also received a personal benefit from his disclosures." [Complaint, ¶ 65] There are no facts pled as to the nature of the benefit, who conveyed it, or when it was conveyed. Thus it is impossible for Griffiths or the Court to know whether the benefit is legally sufficient to meet this required element.

Although in some cases an inference of a benefit received may be drawn from an insider's conveyance of confidential information to a trading relative based solely on that relationship, *see, e.g., Maio*, 51 F.3d at 632 (citations omitted), such an inference cannot be drawn here. The Complaint does not allege that Griffiths knew that Rex C. Steffes, or anyone else, traded in FECI securities. The SEC does not allege a direct financial benefit because Griffiths is not alleged to have traded in FECI securities, or profited from the trades of others.

11

*iv.* *The Complaint Fails to Allege Facts Concerning Griffiths' Scienter*

*Scienter* is a necessary element of the SEC's alleged insider trading claim, but the SEC fails to allege sufficient facts to show Griffiths' state of mind, motivation, or intent.

S*cienter* has been defined in this context as a mental state embracing intent to deceive, manipulate or defraud. *Aaron v. SEC*, 446 U.S. 680, 686 (1980). In some cases, the *scienter* requirement can be satisfied by pleading and proving a reckless disregard for the truth, where "recklessness" is defined as "deliberate ignorance," s*ee SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998), or conduct "so severe that it is the functional equivalent of intent." *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995). Although *scienter* may be generally plead under Rule 9(b), a complaint must allege a sufficient factual basis to show the defendant's state of mind. *See, e.g., In re HealthCare Compare Corp Secs. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996).

Here, the Complaint merely concludes that "Griffiths knew or was reckless in not knowing" that he had inside information, and that, if he conveyed such information to Rex C. Steffes, the information would be used for securities trading. [Complaint ¶¶ 65, 71] As discussed above, the SEC merely alleges that: (i) Griffiths was employed by FECR; (ii) Griffiths performed his FECR job duties; and (iii) Griffiths spoke via telephone to his brother-in-law on seven occasions (most of which occurred before the date on which Griffiths allegedly obtained inside information). These facts do not support a reasonable inference that Griffiths intended to defraud or deceive, or that his conduct was reckless. Without factual allegations to support the SEC's conclusions, it is impossible to determine their theory of intent, or its plausibility. The SEC assumes that Griffiths simply **must have** acted with intent, but without a factual basis for that assumption the allegation is deficient.

## D. The Complaint Fails to Plead Fraud With Particularity

Because the Complaint alleges fraud by Griffiths, the SEC must also satisfy the heightened pleading requirements of Rule 9(b). *See, e.g., DiLeo*, 901 F.2d 624; *Kelly*, 545 F. Supp. 2d at 811 ("[U]nder Rule 9(b), allegations of securities fraud are subject to heightened pleading requirements").

Under Rule 9(b), a fraud claim must allege facts that show, **at a minimum**, "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo*, 901 F.2d at 627. Looking beyond the SEC's bare conclusions, the Complaint fails to allege the who, what, when, where, and how of the fraudulent scheme. The Complaint lacks factual allegations showing: (i) **what** material nonpublic information Griffiths allegedly possessed; (ii) **how** he learned that information; (iii) **what** information Griffiths allegedly conveyed to Rex C. Steffes; (iv) **when** (i.e., during which phone call) particular information was conveyed; or (v) **how** Griffiths intended to defraud or deceive based on his alleged involvement. The SEC's failure to include those facts as to fraud is fatal to the SEC's claim against Griffiths. *DiLeo*, 901 F.2d at 627.

The Complaint also fails to identify Griffiths' particular role in the purported scheme, and instead attempts to hold Griffiths responsible for the conduct of other defendants. For example, the Complaint alleges that "Griffiths **and** Cliff Steffes tipped Rex C. Steffes" without providing any particular facts to differentiate which defendant provided what particular information, and on what date. [Complaint ¶ 44 (emphasis added)] Cliff Steffes is alleged to have possessed inside information, and to have participated in and profited from trading in FECI securities. To comply with Rule 9(b), the Complaint must reasonably notify **each defendant** of his purported role in the fraudulent scheme, and the manner in which he allegedly carried out that role. *See Midwest*

13

*Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Because the SEC fails meet this requirement, its claim against Griffith fails. *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

## IV. CONCLUSION

For the foregoing reasons, the SEC fails to state a claim against Griffiths, and the Complaint against him is properly dismissed.

**DEFENDANT W. GARY GRIFFITHS**

By: /s/ Simon B. Auerbach
One of his Attorneys

Thomas R. Woodrow
Steffanie N. Garrett
Simon B. Auerbach
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Flr.
Chicago, Illinois 60603
Tel: (312) 263-3600
Fax: (312) 578-6666

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2010, I electronically filed the foregoing **DEFENDANT W. GARY GRIFFITHS' MOTION TO DISMISS** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record, including the following: Robert M. Moye, Steven C. Seeger, and Scott B. Tandy, U.S. Securities and Exchange Commission, Chicago Regional Office, 175 West Jackson Boulevard, Suite 900, Chicago, IL 60604-2615; Constantine John Gekas, John C. Gekas, Gekas Law LLP, 11 South LaSalle Street, Suite 1700, Chicago, Illinois 60603.

                                                                       /s/ Simon B. Auerbach